1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
VERA KAYKY,                             )
                                        )        No. C15-0488RSL
                                        )
                    Plaintiff,          )
         v.                             )
                                        )        ORDER GRANTING MOTION FOR
THE BOEING COMPANY,                     )        SUMMARY JUDGMENT
                                        )
                    Defendant.          )
_____ )

        This matter comes before the Court on "Defendant The Boeing Company's Motion for

Summary Judgment." Dkt. # 57. Plaintiff has asserted claims of national origin discrimination,

hostile work environment, and retaliation against Boeing under Title VII. Boeing seeks a

summary resolution of all of plaintiff's claims.

        Summary judgment is appropriate when, viewing the facts in the light most favorable to

the nonmoving party, there is no genuine dispute as to any material fact that would preclude the

entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears

the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record"

that show the absence of a genuine dispute of material fact (Fed. R. Civ. P. 56(c)). Once the

moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp.,

477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda,[1] declarations, and exhibits submitted by the parties, the Court finds as follows:

## BACKGROUND

Plaintiff began working at Boeing in April 2013. She was hired as an IT Project Management Specialist, Level 1, after interviewing with Paul Cook (who became her immediate supervisor), Garima Bilwani (a Level 5 project manager who also reported to Mr. Cook), and a Human Resources Generalist. At the time, Mr. Cook's team was working closely with a Russian contractor, Luxoft, developing proprietary software for Boeing's internal use. Plaintiff is fluent in Russian, an attribute which Mr. Cook deemed valuable during the interview process. Mr. Cook intended to have plaintiff manage all of the Luxoft projects.

---

[1] Plaintiff's response memoranda contains a number of factual assertions that are wholly unsupported by the record. For example, plaintiff states that "[s]he was humiliated in [] front of her coworkers on two occasions by Ms. Bilwani, once on September 10, 2013, and second time [i]n March, 2014." Dkt. # 63 at 6-7. Plaintiff cites to her declaration as evidence of an interaction with Ms. Bilwani in March 2014, but the declaration mentions only an interaction with a Ms. Byrer in that time frame. Dkt. # 63-1 at 9. Unsupported statements in the memoranda have not be considered.

Plaintiff's request to strike evidence submitted by defendant in reply (Dkt. # 70) is DENIED.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -2-

1    Within weeks of placing plaintiff in the project manager position, however, Mr. Cook

2    began receiving complaints from Boeing employees and Russian contractors that plaintiff was

3    being unprofessional, demanding, demeaning, and argumentative.[2] Plaintiff had no prior project

4    management experience, and Mr. Cook's and Ms. Bilwani's efforts to coach her were

5    unsuccessful. When the supervisor of the Russian contractors reported that plaintiff had used

6    unprofessional language and that his employees felt disrespected and demoralized, Mr. Cook

7    reassigned plaintiff to a software development role. She retained her original job title, salary, and

8    benefits. Mr. Cook discussed the change with plaintiff, advising her that it would allow her to

9    better understand the relationship between the developers and the project managers, give her

10   time to work on her communication skills, and hopefully help her learn the role of project

11   manager.[3]

12   Although plaintiff had an information technology degree, she was unfamiliar with the

13   programming languages used in Boeing's projects and therefore sought out training

14   opportunities. Mr. Cook authorized classes at the University of Washington and over fifty-five

15   hours of internal and third-party training. He did not, however, approve an October 2013 request

16   to take a project management training course, stating that the class "is not required for your

17   current job." Dkt. # 63-4 at 12.

18   In September 2013, Ms. Bilwani yelled at plaintiff during a meeting with plaintiff's

19   supervisor and co-workers. Plaintiff was embarrassed and found Ms. Bilwani's manner and

20

21   [2] Although plaintiff states that "[t]here were no issues in my work since I started to work in April
     12, 2013 until on September 11, 2013," (Dkt. # 63-1 at ¶ 25), she has no personal knowledge regarding
22   the complaints Mr. Cook or Ms. Bilwani received and does not address, much less refute, their
     testimony on that matter.
23

24   [3] At various points in her response and declaration, plaintiff suggests, without actually stating,
     that she was unaware that she had been assigned and would be evaluated on software development tasks
25   and/or that such assignments were in some way improper because she retained her program manager job
     title. The first contention is contradicted by the admissible evidence and the second is wholly
26   unsupported.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT              -3-

attitude harassing. As they left the conference room, Ms. Bilwani and plaintiff stopped to talk to a newly-arrived Russian contractor. From the look on the contractor's face, plaintiff knew that he did not understand what Ms. Bilwani was attempting to tell him. Plaintiff started to translate into Russian, but Ms. Bilwani yelled at her to "not speak Russian. Here is place where people are speaking only English. English only." Dkt. # 62-1 at 35. The topic of the conversation with the Russian contractor was work-related, not personal. The next day, plaintiff told Mr. Cook that Ms. Bilwani had told her she could not speak Russian. He said he would talk to Ms. Bilwani and take care of it. Plaintiff has no reason to think he did not do so.

Plaintiff's 2013 year-end performance review was underwhelming. Mr. Cook noted that plaintiff fell behind in her software development work and was having trouble communicating in positive ways with team members. Although plaintiff disagreed with many of her supervisor's comments, whatever efforts she made to insert her own comments into the performance review document were unsuccessful (at the time, plaintiff told human resources that she had inserted comments, but believed that her VPN connection dropped before they were saved). Her signature on the performance review was recorded, however, and the document was closed-out with no employee comments. Three days after the performance review was closed-out, plaintiff emailed human resources to have the review reopened because Mr. Cook was on medical leave. Human resources referred her to Mr. Cook's supervisor, who was told by Total Access that only an employee's immediate supervisor can return a review to the employee to add comments. Boeing's policies, however, provide that "[w]hen a manager is on an official [leave of absence], the [Performance Management ("PM")] documents for all of their direct assigned employees will automatically be assigned to the next level up manager." Dkt. # 63-4 at 8. In an attempt to break the logjam, plaintiff emailed Mr. Cook, who was still on medical leave, but got no response.

At some point between December 23, 2013, and January 29, 2014, plaintiff complained

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -4-

to human resources regarding the substantive ratings on her performance evaluation. Plaintiff met with human resources and submitted a written statement on February 4, 2014. Neither party has supplied a copy of that statement. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") dated February 7, 2014, in which she alleged national origin discrimination and retaliation.

In March 2014, Mr. Cook moved plaintiff back into her project manager role. Plaintiff managed to step on toes almost immediately. In her declaration, plaintiff recounts an interaction from March 27, 2014, in which she participated in a conference call with Russian contractors and a Boeing project manager, Loralie Byrer. Plaintiff states that Ms. Byrer was having trouble making herself understood, and when plaintiff said "I will go ahead and translate it to them," Ms. Byrer "did not resist." Dkt. # 63-1 at 9. The project manager's version of the meeting – summarized in a contemporaneous email to Mr. Cook – was slightly different. According to Ms. Byrer, the meeting was part of the process of turning over a project to plaintiff, who was late to the meeting and had to participate by phone for the first part. When plaintiff arrived, she was very eager to move forward, but unwilling to hear and learn from others. When she excused the English speakers from the room so that she could speak to the Luxoft manager in Russian, the outgoing project manager felt "excluded, disrespected, discarded and stepped on." Dkt. # 58-1 at 40. Mr. Cook immediately contacted plaintiff in an attempt to clarify the contexts in which Russian can be spoken in the workplace. A face-to-face meeting did not occur, resulting in a lengthy email conversation. Mr. Cook explained:

> As you recall one of the attributes that made you attractive as a candidate to hire for the Boeing company was your strong technical skills and your language skills specifically in Russian since we targeted you to take over Garima's team. That team had the most interaction with Luxoft .[] In fact I encouraged you to speak to Russian developers in Russian in a one on one situation or in group setting when non Russian speakers weren't present. Since Boeing is an American company it is expected that English is spoken as a rule when English speakers are present. You are encouraged to translate but please be ask[ed] to volunteer to do so.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -5-

Dkt. # 58-2 at 6. Plaintiff responded that, unless there were a business necessity documented in Boeing's policies or the common law, she would "never ask permission to speak my own language." Id. at 4-5.

On or before April 1, 2014, a member of Mr. Cook's team notified him that plaintiff had said she did not pay for internet service for herself, instead hacking into other people's wireless networks to gain unauthorized access. Mr. Cook, believing such behavior to be unethical, potentially illegal, and a security threat to Boeing, notified human resources. The matter was referred to Corporate Investigations.

On May 1, 2014, Mr. Cook received an email from the same Russian supervisor who had contacted him shortly after plaintiff had started working for Boeing the year before. He summarized his prior concerns and noted a lack of improvement.

> Vera is arguing aggressively with the customer and the development team. She is attempting to implement software development process by screaming and referring to classes/books rather than practical lessons and experience. . . . Vera consistently attempts to start with long monologues, requesting changes in communication and delivery in a way that she believes is correct. . . . Vera used meetings with the customer and offshore team to judge individual team members, their approach to work, complaining about "wrong way" of working with the customer, demotivating team, and even using offensive foreign language that appears to be native language of the team.

Id. at 9. Mr. Cook began consulting with human resources regarding next steps.

Meanwhile, the investigation into plaintiff's internet access proceeded. On May 13, 2014, plaintiff was suspended pending the outcome of the investigation. Five individuals, including plaintiff and her neighbor, were interviewed and plaintiff's computer was analyzed. Plaintiff denied the accusation and wanted an opportunity to review her interview statement and provide proof that she had purchased internet access for herself. The investigator contacted her two days after the interview and asked for the information by the end of the next day. Plaintiff objected to

1  the rush, but made no effort to explain the delay. On June 11, 2014, the investigator issued a

2  report concluding that plaintiff had, without authorization, used her Boeing-assigned computer

3  to access her neighbor's encrypted, password-protected wireless network. Plaintiff's

4  employment was terminated on June 18, 2014.

5  **DISCUSSION**

6  **A. National Origin Discrimination**

7      Plaintiff alleges that defendant discriminated against her because of her national origin in

8  violation of state and federal law. To avoid summary judgment on her disparate treatment claim,

9  plaintiff must present evidence from which a reasonable jury could find "an adverse employment

10 consequence and discriminatory intent by [her] employer." Burlington Indus., Inc. v. Ellerth, 524

11 U.S. 742, 767 (1998). In order to raise an inference of discriminatory intent, plaintiff may rely

12 on direct evidence of the employer's intent or may utilize the burden-shifting analysis set forth

13 in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Vasquez v. County of Los

14 Angeles, 349 F.3d 634, 640 (9th Cir. 2003); Kastanis v. Educational Employees Credit Union,

15 122 Wn.2d 483, 491 (1993).

16     Plaintiff offers no direct evidence of discriminatory animus toward Russians in general or

17 plaintiff as a Russian-speaker. "Direct evidence is evidence which, if believed, proves the fact

18 [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc.,

19 150 F.3d 1217, 1221 (9th Cir. 1998) (alteration in original). The two negative episodes identified

20 by plaintiff that had anything to do with her national origin were when Ms. Bilwani and Ms.

21 Byrer objected to plaintiff's use of the Russian language in meetings in which non-Russian

22 speakers were present (or were purposely excluded). There is no evidence that Ms. Bilwani or

23 Ms. Byrer disliked plaintiff – or any of the Luxoft contractors they managed – because of their

24 national origin. Nor does the limited, reasonable, business-related English-only rule applied by

25 the project managers and explained by Mr. Cook itself constitute disparate treatment. Jurado v.

26

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -7-

1    Eleven-Fifty Corp., 813 F.2d 1406, 1411 (9th Cir. 1987). See Domingo v. Boeing Employees'

2    Credit Union, 124 Wn. App. 71, 82 (2004). Thus, plaintiff must raise an inference of

3    discrimination utilizing the McDonnell Douglas analysis for both her state and federal claims.

4        Under McDonnell Douglas, plaintiff must show that she is a member of a protected class,

5    she was qualified for her position, she experienced an adverse employment action, and "similarly

6    situated individuals outside [the] protected class were treated more favorably, or other

7    circumstances surrounding the adverse employment action give rise to an inference of

8    discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). Plaintiff is

9    a member of a protected group and was qualified for her position. She has therefore established

10   the first two elements of a prima facie case.

11       For purposes of this motion, the Court will assume that plaintiff suffered two actions that

12   "materially affect the compensation, terms, conditions, or privileges of [her] employment,"

13   namely the December 2013 negative performance evaluation and the June 2014 termination.

14   Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir 2000). See Alonso v. Qwest

15   Commc'ns Co., LLC, 178 Wn. App. 734, 746 (2013) ("An adverse employment action involves

16   a change in employment conditions that is more than an inconvenience or alteration of one's job

17   responsibilities, such as reducing an employee's workload or pay.").[4] Plaintiff has not, however,

18   provided any evidence that similarly-situated non-Russians or non-Russian speakers were treated

19   more favorably with regards to either of these actions. "[I]ndividuals are similarly situated when

20

---

21       [4] During her deposition, plaintiff stated that the negative evaluation was in retaliation for her
22   complaint about Ms. Bilwani and expressly disavowed any claim that Mr. Cook gave her a negative
     performance review because of her national origin. Dkt. # 62-1 at 52. Giving plaintiff every benefit of
23   the doubt, this newly-asserted basis for her disparate treatment claim has been considered on the merits.
         To the extent plaintiff is asserting a disparate treatment claim based on the fact that she was
24   assigned software development tasks, there was no adverse employment action when her title, salary,
     and benefits all remained the same. Similarly, the fact that plaintiff was denied the opportunity to take a
25   particular training course – when all of her other requests were granted and she was given special
     permission to attend the University of Washington – had no tangible employment consequence.
26

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -8-

they have similar jobs and display similar conduct." <u>Vasquez v. County of Los Angeles</u>, 349

F.3d 634, 641 (9th Cir. 2003). Plaintiff's recorded output as a software developer was well off

the pace of her coworkers, and she has not offered any evidence that non-Russian employees

with similarly low output received more favorable reviews. Nor has plaintiff shown that Mr.

Cook gave other employees who argued with customers and denigrated team members better

evaluations. With regards to her termination, plaintiff failed to identify any other employee who

used a company computer to hack into their neighbor's wireless network, much less one who

was not disciplined or terminated as a result. Absent comparator evidence, plaintiff has shown

nothing more than that she belongs to a protected group and did not succeed in her position. No

presumption of unlawful discrimination arises in these circumstances.

Even if a prima facie case of discrimination were established, Boeing has articulated

legitimate, non-discriminatory reasons for the negative performance evaluation and termination.

Any inference of discrimination that may have arisen under the first prong of the <u>McDonnell</u>

<u>Douglas</u> analysis therefore drops from the picture. <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271,

1282 (9th Cir. 2000).[5] In order to stave off summary judgment, plaintiff must show that a triable

issue of fact exists by introducing evidence that Boeing's explanations are unworthy of credence

or that a discriminatory reason more likely motivated the employer than the articulated non-

discriminatory reasons. <u>Nicholson v. Hyannis Air Serv., Inc.</u>, 580 F.3d 1116, 1126-27 (9th Cir.

2009); <u>Scrivener v. Clark College</u>, 181 Wn.2d 439, 446 (2014).

Plaintiff has failed to meet her burden. With regards to her performance evaluation,

plaintiff asserts that her production levels were not subpar and that there were no complaints

regarding her communication style prior to the end-of-year performance review. Plaintiff offers

---

[5] If the Court were to assume that requesting plaintiff to speak English when non-Russian speakers were present and/or refusing to approve a single training opportunity constitute "adverse employment actions," Boeing has also identified legitimate, non-discriminatory reasons for those actions.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -9-

copies of timesheets showing time spent on certain tasks (both before and after her performance review) and a list of twenty-five tasks to which she was assigned, most of which were marked "Closed." Mr. Cook's criticism in this regard was that plaintiff "[f]alls behind on work output in TFS." The timesheets show time spent, not progress made. The list of "closed" tasks reflects approximately 76.5 hours of plaintiff's time over six months and does not provide any basis on which to evaluate her output overall or in comparison with other team members. With regards to her statement that there were no complaints during the relevant time frame, she has no personal knowledge to support such an assertion, she makes no attempt to explain why Mr. Cook and Ms. Bilwani were attempting to coach her or why Mr. Cook felt it necessary to restructure her assignments to allow her to develop necessary communication skills, and she simply ignores the Russian supervisor's comments by labeling them "fabricated." Bare denials coupled with irrelevant documents do not give rise to a genuine issue of fact.

With regards to her termination, plaintiff argues that there were stones left unturned when Boeing investigated whether she had hacked into her neighbor's wireless network. Boeing's investigation was very thorough, including a forensic evaluation of plaintiff's computer, a visit to plaintiff's neighborhood, and communication with the neighbor. Plaintiff was given an opportunity to provide evidence of her internet subscription and to review her statement as recorded by the investigator. The investigation was concluded when the investigator was satisfied that additional evidence was not necessary or was not forthcoming. The investigator's findings justified termination. There is no reason to suspect that Boeing did not honestly believe that plaintiff had used her work computer to hack into her neighbor's encrypted and password-protected network when it fired her. Plaintiff has not shown that there is a triable issue of fact regarding whether her performance review and/or termination were motivated by her national origin.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                    -10-

1  **B. Hostile Work Environment**

2      Workplace discrimination laws not only protect employees from discriminatory adverse

3  employment actions, they also preclude less drastic alterations in the conditions of employment

4  caused by pervasive discriminatory attitudes in the workplace. "When the workplace is

5  permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

6  pervasive to alter the conditions of the victim's employment and create an abusive working

7  environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal

8  quotation marks and citations omitted). To be actionable, the work environment must be both

9  subjectively and objectively hostile. Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 871-72

10  (9th Cir. 2001). An environment is objectively hostile when, considering all of the circumstances

11  "including the frequency of the discriminatory conduct; its severity; whether it is physically

12  threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

13  with an employee's work performance," a reasonable person in plaintiff's position would

14  perceive it to be hostile. Dominguez-Curry v. Nev. Transp. Dept., 424 F.3d 1027, 1034 (9th Cir.

15  2005) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001)).

16      Plaintiff's hostile work environment claim is based primarily on the fact that she

17  perceived any request that she speak English when conducting business in the presence of non-

18  Russian speakers – or any attempt to explain Boeing's policy on the issue – as harassing. As

19  discussed above, the limited, reasonable, business-related English-only rule applied by the

20  project managers and explained by Mr. Cook does not constitute discriminatory conduct. Jurado,

21  813 F.2d at 1411. Nor were the two incidents with Ms. Bilwani and Ms. Byrer particularly

22  intense, physically intimidating, or frequent. Plaintiff has failed to raise a genuine issue of fact

23  regarding whether these interactions are discriminatory or amount to changes in the terms and

24

25

26

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                        -11-

1    conditions of plaintiff's employment.[6]

2    **C. Retaliation**

3        Plaintiff asserts that defendant retaliated against her for complaining about Ms. Bilwani's

4    "English only" statement in September 2013 and for filing an EEOC complaint in February

5    2014. To prove a claim of retaliation, plaintiff must show that (a) she engaged in statutorily

6    protected activity, (b) there was an adverse employment action, and (c) retaliation was causally

7    connected to or a substantial factor motivating the adverse action. Raad v. Fairbanks N. Star

8    Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003); Kahn v. Salerno, 90 Wn. App. 110,

9    128-29 (1998). Once a prima facie case of retaliation is presented, the burden shifts to defendant

10   to articulate a legitimate, non-retaliatory reason for the adverse employment action. Ray v.

11   Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Renz v. Spokane Eye Clinic, P.S., 114 Wn.

12   App. 611, 618 (2002). Plaintiff bears the ultimate burden of persuasion, however, and must raise

13   an inference of retaliation to withstand a motion for summary judgment.

14       The Court will assume that plaintiff engaged in statutorily protected activity, was

15   subjected to adverse employment actions, and adequately established a causal connection

16   between the protected activity and the adverse actions based on their temporal proximity.[7]

17   Boeing has, however, articulated legitimate, non-retaliatory reasons for the negative evaluation

18   ─────────────────

19       [6] Plaintiff's more general allegations of harassment are too non-specific and conclusory to show
20   that the workplace was objectively hostile from the perspective of a reasonable woman. See, e.g., Dkt.
     # 63 at 6-7 ("She was harassed by her manager Mr. Cook after she wrote the letter of complain[t] to HR
21   on February 4, 2014" and "She was harrased by Mr. Cook and Ms. Bilwani after she complained to Mr.
     Cook about discriminatory behavior of Ms. Bilwani: Mr. Cook started to make up the case to get rid of
22   her . . . .").

23       [7] The causation analysis differs under Title VII and the Washington Law Against Discrimination.
     The United States Supreme Court has adopted a "but for" standard of causation for Title VII retaliation
24   claims. Univ. of Tex. Sw. Med. Ctr. v. Nassar, __ U.S. __, 133 S. Ct. 2517, 2534 (2013). "Washington
     law imposes a looser standard, evaluating whether retaliation was a 'substantial factor' motiving the
25   discharge." Knutson v. Wenatchee Sch. Dist. # 246, 2015 WL 4456245, at *19 (Wn. App. July 21,
26   2015) (citing Allison v. Hous. Auth., 118 Wn.2d 79, 95-96 (1991)).

plaintiff received in December 2013 and her termination in June 2014. As discussed above, plaintiff has not raised a triable issue regarding Boeing's motivations. The evidence shows that, as Mr. Cook noted, plaintiff was having difficulty performing both her project manager and software development tasks and that plaintiff engaged in conduct justifying termination. Taken in context, including the complaints Mr. Cook received, his efforts to coach plaintiff, the report of unethical behavior from a co-worker, and the results of an independent investigation, no reasonable jury could conclude that retaliation was the "but for" cause of or a substantial factor motivating the December 2013 evaluation or the June 2014 termination.

**D. Leave to Amend**

Plaintiff requests leave to amend her complaint to the extent the Court finds her current allegations inadequate. Dkt. # 63 at 20. As discussed above, plaintiff's claims fail on the merits, not as a result of a pleading deficiency. In responding to defendant's motion for summary judgment, plaintiff had an opportunity to provide any and all evidence she has that would support her claims. She did not seek a continuance and has not explained why "other evidence she discovered in the depositions and other sources" was not provided in a timely manner. Id. The request for leave to amend is denied.

For all of the foregoing reason, defendant's motion for summary judgment (Dkt. #57) is GRANTED. Plaintiff's claims are hereby DISMISSED, and the Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

Dated this 3rd day of November, 2016.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT                         -13-